**LLOYDS' LONDON and various alien insurers, Appellants,**

**v.**

**F. R. BLAIR and Pearl Blair, husband and wife, for themselves and on behalf of all persons owning dwellings and buildings in southwestern Oklahoma City, Oklahoma, and United States of America, et al., Appellees.**

**No. 5769.**

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1958.

---

Gus Rinehart, Oklahoma City, Okl., for appellants.

James E. Grigsby, Oklahoma City, Okl. (Howard C. Triggs, Oklahoma City, Okl., on the brief), for appellees.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

BRATTON, Chief Judge.

F. R. Blair and Pearl Blair, husband and wife, for themselves and all others similarly situated, instituted this proceeding as a class action against the United States to recover damages under the Tort Claims Act, as amended, 28 U.S.C.A. § 2671 et seq. It was pleaded in the complaint that on or about September 3, 1956, the Department of the Air Force and the Department of the Navy of the United States participated in a national air show conducted at Will Rogers Field near Oklahoma City, Oklahoma; that in connection with such show, the Departments propelled jet planes at a speed greater than the velocity of sound and broke the sound barrier which caused violent and explosive vibrations of the atmosphere surrounding two dwellings owned by plaintiffs as well as other dwellings and buildings in southwestern Oklahoma City; that the buildings owned by plaintiffs suffered structural damage in the sum of $750; that buildings owned by others were damaged in like manner; and that the propulsion of such airplanes at that place and in that manner constituted negligence. With leave of court, more than three hundred other owners of property intervened, each seeking damages for alleged injury to his property. The claims ranged in amounts from $3,973 to less than $25. By supplemental complaint, Mendes and Mount of New York City, attorneys-in-fact for Lloyds' London and various alien insurers, were joined as parties defendant. It was pleaded in such amendment that prior to the air show, the insurance companies referred to issued their "cover note of insurance" in which they specifically insured the United States, its officers and employees and members of the Armed Forces, with limits of $500,000, against loss from liability imposed by law on account of damage and destruction of property, and loss of use thereof, caused by, arising out of, or resulting from the ascent, descent, or flight of aircraft in connection with such air show; and that the policy specifically covered claims arising out of sound wave shock resulting from aircraft passing through the sonic barrier. A copy of the insurance contract was attached to the pleading and made a part thereof.

The defendants United States, and Mendes and Mount, attorneys-in-fact for Lloyds' London and other insurers, filed separate motions to dismiss the action; and the defendant United States filed an admission of certain facts. It was admitted that the Armed Forces of the United States participated in the air flights; that the flights performed by the Air Force included the breaking of the sound barrier according to certain specified flight patterns; that certain specified flights—some diving and some horizontal—broke the sound barrier at specified feet, respectively; that the focal point for breaking the barrier was the intersection of the runways at Will Rogers Field; that the single low level flight on August 31 caused glass breakage to the air terminal building at Will Rogers Field; that such flight originated from the southeast and traveled in a northwesterly direction; and that it broke the sound barrier at approximately the intersection of the runways in the center of Will Rogers Field. Some of the plaintiffs answered certain interrogatories. A motion was filed for partial summary judgment in favor of plaintiffs and for the appointment of a master to determine damages. The substance of the motion was that the court enter judgment adjudging that the insurers were indebted under their contract of insurance to each of the plaintiffs for all damages suffered by each of them proximately resulting from the sound wave shock occurring as the result of the propulsion of the jet planes; and that a master be appointed to hear evidence

and determine the damages suffered by each plaintiff. In the course of a hearing on the motion for partial summary judgment, the attorney for the defendants Lloyds' London and other alien insurers conceded at the bar of the court that such defendants had contracted in writing with the United States to pay all damages caused by the breaking of the sound barrier, whether caused by negligence or otherwise. After the making of such concession, the court entered judgment determining that the motion of the defendant United States to dismiss the action be held in abeyance; determining that the motion of the defendants Lloyds' London and other alien insurers to dismiss the action be denied; and determining that plaintiffs have judgment against the defendant insurers for damages sustained by the several plaintiffs proximately resulting from the sound wave shock occurring during the air show, the several amounts, respectively, to which plaintiffs were entitled, if any, to be determined later. The defendants Lloyds' London and other alien insurers appealed.

■■ One ground of challenge to the judgment is the improper joinder of causes of action. The argument is that a cause of action against the United States sounding in tort and a cause of action against insurance companies predicated upon contract were improvidently joined without warrant in law. By section 2674 of the Tort Claims Act, the United States is made liable in respect to tort claims in the same manner and to the same extent as a private individual under like circumstances, except that it is not liable for interest prior to judgment or for punitive damages. And 28 U.S.C. § 1346(b) vests in the United States Courts, subject to the provisions of the Tort Claims Act, exclusive jurisdiction of civil actions on claims against the United States for money damages for injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant under the law of the place at which the act or omission occurred. Section 2674 did not create a new cause of action. It merely constituted an acceptance of liability on the part of the United States under circumstances which would give rise to private liability. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. It waived the immunity of the Government to suits of that kind. United States v. Yellow Cab. Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523.

■ In United States v. Yellow Cab Co., supra, it was held that the Federal Rules of Civil Procedure, 28 U.S.C.A., have application in an action for damages under the Tort Claims Act, and that under such rules the defendant in an ordinary action between private parties for damages for tort may implead the United States, charging that the negligence of its agent or employee was the sole proximate cause or a contributing proximate cause of the injury to plaintiff and that therefore the United States should respond in damages under the doctrine of contribution among wrongdoers. But there the cause of action pleaded against the defendant was one sounding in tort and the basis of the third-party proceeding against the United States was of like character. And recognizing the right of contribution among tort feasors in a case of that kind did no more than adjust the remedy of contribution to established general practice of long standing. Here plaintiffs joined two causes of action. One was against the United States. It sounded in tort, and the genesis of the remedy in damages was the Tort Claims Act. No contractual right or liability was involved. The other was against a group of insurance carriers. The liability asserted in it was solely and exclusively contractual. No liability in the nature of a tort committed by the insurance companies was involved. According to the face of the amended complaint, the United States committed a wrong for which

it was liable under the Tort Claims Act but it did not obligate itself by contract to respond in damages. The insurance carriers obligated themselves by contract to respond by way of compensation for the tortious conduct of the United States but they did not commit any tort. The two causes of action were separate and distinct with entirely different bases in law. No single party defendant was liable both as a tort feasor and as contractual obligee for the payment of compensation under an insurance agreement. And the issues as between plaintiffs and the United States on one hand, and as between plaintiffs and the insurance carriers on the other hand, were not identical. As against the United States, negligence was an issue which plaintiffs were required to establish by evidence as a prerequisite to the right to recover. As against the insurance carriers, negligence was not an issue which plaintiffs were required to prove before they could recover. Taking into consideration the Congressional purpose in the enactment of the Tort Claims Act giving consent that the United States should be subject to suit for tortious conduct of its agents or employees, and also taking into consideration the general intent and purpose of the promulgation of the Rules of Civil Procedure, we think that it was never intended or contemplated that a plaintiff should have the right to join with a cause of action against the United States under the Tort Claims Act a cause of action against third parties predicated upon a contractual obligation contained in an insurance policy. In other words, we fail to find in the Tort Claims Act or its legislative history, or in the Rules of Civil Procedure or their historical background, anything which lends support to the view that it was intended or purposed that a suit against insurance carriers for the enforcement of a contractual obligation contained in a policy of insurance could be joined with an action against the United States under the Tort Claims Act. Accordingly, it is our conclusion that the motion to dismiss the action as against the defendant insurance companies should have been granted without prejudice.

What has been said is dispositive of the case on this appeal and eliminates need to explore other questions presented.

The judgment appealed from is reversed and the cause is remanded for dismissal of the action without prejudice as against Lloyds' London and other alien insurers.